IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00025-PAB-KLM

MICHAEL THOMPSON,

    Plaintiff,

v.

MR. H. A. RIOS, JR.,
MR. ORTEGA,
MR. MOLINA,and
MR. CHAVEZ,

    Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendants' Motion for Summary Judgment** [Docket No. 93; Filed February 9, 2009] (the "Motion"). Pursuant to 28 U.S.C. § 636(b)(1) and D.C. Colo. L. Civ. R. 72.1(C), the Motion has been referred to this Court for Recommendation. The Court has reviewed the Motion, Plaintiff's Motion in Opposition to Defendants' Motion for Summary Judgment [Docket No. 98; Filed February 23, 2009], Defendants' Reply in Support of Motion for Summary Judgment [Docket No. 100; Filed March 11, 2009], Plaintiff's Reply in Support of Motion Opposing Defendants' Motion for Summary Judgment [Docket No. 102; March 30, 2009], the case file and the relevant law and is advised in the premises. For the reasons stated below, I RECOMMEND that the Motion be **GRANTED**.

I. Background

Plaintiff is a federal inmate serving a 25-year sentence for armed bank robbery and assault with a deadly weapon in the custody of the Bureau of Prisons ("BOP"). *Motion* [#93] Ex. A at 5.[1] He is currently incarcerated at the Federal Correctional Center in Butner, North Carolina. *Id.* From March 19, 2004 to January 5, 2006, Plaintiff was designated by the BOP for transfer to the United States Penitentiary in Florence, Colorado ("USP-Florence"). *Id.* Ex. B at ¶ 3b.[2] Plaintiff was transferred to USP-Florence from the United States Penitentiary in Terre Haute, Indiana. *Id.* at ¶ 3d. The transfer was made for Plaintiff's protection because other inmates had learned that the Plaintiff had cooperated with the government in an investigation. *Id.* Defendants are current or former BOP officials employed at the Federal Correctional Complex in Florence, Colorado. *Complaint* [#3] at 2-3.

On May 13, 2004, while he was incarcerated at USP-Florence, Plaintiff was placed in the prison's Special Housing Unit ("SHU") on Administrative Detention ("AD") status for his own protection because he was a potential government witness in a murder case. *Motion* [#93] Ex. A at 27-28; Ex. B at ¶ 3d, e. Prison staff began an investigation to determine whether Plaintiff could be safely housed in the general population. *Id.* Ex. B at ¶ 3e. Plaintiff received a 7-day review of his SHU status on May 20, 2004, and a 30-day review on June 14, 2004. *[Docket #93-4]* at 75-76.

In June 2004, Plaintiff was transferred to the CTF-CCA Facility in Washington, DC

---

[1] Exhibit A is a partial transcript of Plaintiff's deposition.

[2] Exhibit B is a Declaration of John Chavez, a BOP Special Investigative Agent.

on a writ to testify on the government's behalf. *Complaint* [#3] at 5. Plaintiff returned to USP-Florence on September 9, 2004 and was placed back in the SHU. *Motion* [#93] Ex. B at ¶ 3g. Prison staff continued its investigation into whether Plaintiff could be returned to the general population. *Id.* During an interview conducted as part of the investigation, Plaintiff stated that he was told by other inmates in the SHU that he could not be released into the general population because another inmate knew he had cooperated with the government. *Id.* ¶ 3h. The prison staff were unable to verify this information, but Plaintiff insisted that he believed that he would be killed if he were released to the general population. *Id.* ¶ 3i. Therefore, the Unit team staff recommended that Plaintiff be considered "a verified protective custody case and submitted for transfer." *Id.*

On December 1, 2004, Plaintiff submitted a Request for an Administrative Remedy stating that USP-Florence was an unsafe environment and sought a transfer to another institution or to the Delta B-Unit at USP-Florence. *Complaint* [#3] at 34. On January 14, 2005, Plaintiff was transferred to the Delta Unit, which is a transitional unit at USP-Florence. *Motion* [#93] Ex. B at ¶ 3j. The Warden advised Plaintiff that he was not eligible for a transfer to another facility. *Complaint* [#3] at 35.

On February 15, 2005, Plaintiff appealed the Warden's decision, alleging that he had been in the SHU for nine months after the staff found that he would not be safe in the general population, and requesting that he be told why he was ineligible for a transfer to another facility. *Id.* at 36. The Regional Director remanded Plaintiff's transfer request back to USP-Florence for further review. *Id.* at 37.

Plaintiff appealed to the Administrator of National Inmate Appeals on April 7, 2005. In addition to the transfer issue, Plaintiff also complained that the Delta Unit had been

converted into a overflow unit for the SHU and contained the same restrictions as the SHU. *Id.* at 38. The appeal was denied by the Administrator, who noted that Plaintiff had been returned to the general population as of March 11, 2005. *Id.* at 39.

On May 9, 2005, Plaintiff received an incident report for "insolence to a staff member." *Motion* [#93] Ex. B at ¶ 3j. As a result, Plaintiff was punished with 15 days disciplinary segregation, loss of various privileges, and disallowance of 10 days good conduct time. *Id.*

On June 22, 2005, Plaintiff submitted another Request for Administrative Remedy. He alleged that the prison had denied him due process because he was not allowed to be present at the 30-day reviews during his thirteen months in the SHU. *Complaint* [#3] at 27. Plaintiff also alleged he had been denied a copy of the findings at the reviews. *Id.*

On August 4, 2005, Defendant Warden Rios signed Plaintiff's "Request for Transfer" form. *Motion* [#93] Ex. B at ¶ 3l. The Warden denied Plaintiff's Request for an Administrative Remedy on August 11, 2005. *Complaint* [#3] at 28. Plaintiff appealed that decision on August 17, 2008. *Id.* at 29. The Regional Director denied relief on September 16, 2005. *Id.* at 30. The Administrator of National Inmate Appeals affirmed that decision on February 3, 2006, finding that Plaintiff's due process rights had not been violated by prison officials. *Id.* at 31-33. In the interim, on January 5, 2006, Plaintiff was transferred to USP-Beaumont. *Motion* [#93] Ex. B at ¶ 3.[3]

II. Standard of Review

---

[3] The Declaration of John Chavez has two paragraph threes.

As a preliminary matter, the Court notes that Plaintiff is proceeding *pro se*. As such, the Court construes his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court is not the *pro se* party's advocate and must nevertheless deny Plaintiff's motions if he has failed to establish that he is entitled to the relief that he seeks. *See Hall*, 935 F.3d at 1110.

Summary judgment is proper when the record before the court "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if the outcome could be decided in favor of either party. *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it could reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The factual record and inferences therefrom are generally viewed in the light most favorable to the nonmoving party. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998).

Where the movants do not bear the ultimate burden at trial, as is the case here, they need only satisfy the initial burden of demonstrating the absence of evidence to support the nonmovant's case. *In re Ribozyme Pharm. Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002). Once the motion has been properly supported, the burden shifts to the nonmovant to show the existence of a genuine dispute of a material issue. The nonmoving party must go beyond the allegations in his pleading and provide "specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To satisfy his burden of providing specific facts, the nonmoving party must tender affidavits or other competent evidence. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The Court may consider a verified complaint as an affidavit. *Green*

5

*v. Branson*, 108 F.3d 1296, 1301 n. 1 (10th Cir. 1997); *see also Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988)("Although a nonmoving party may not rely merely on the unsupported or conclusory allegations contained in his pleadings, a verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e).").

Where the court treats a verified complaint as an affidavit, whether this affidavit in opposition to summary judgment is "sufficient to create a genuine issue of material fact must be evaluated in light of the principle that 'conclusory allegations without specific supporting facts have no probative value.'" *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (quoting *Evers v. GMC*, 770 F.2d 984, 986 (11th Cir. 1985)). That is, "there may be cases where the sole reliance on a verified complaint would be insufficient to meet a nonmoving party's burden . . ., especially when the allegations contained in the pleading are merely conclusory." *Conaway*, 853 F.2d at 792-93; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990) (finding that an affidavit merely stating conclusory allegations is insufficient to withstand a defendant's properly supported motion for summary judgment). "Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." *Southway v. Central Bank of Nigeria*, 149 F. Supp. 2d 1268, 1273 (D. Colo. 2001). That is, Plaintiff must present evidence that is "based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." *Id.* at 1274 (quotation omitted).

### III. Analysis

In his Complaint, Plaintiff asserts that the Defendants denied him procedural due process by placing him in administrative detention, by failing to properly review his status

in the SHU, and by not providing him a copy of the findings justifying his stay in the SHU for over 500 days. *Complaint* [#3] at 4. On March 31, 2008, the Court granted in part Defendants' Motion to Dismiss. The Court dismissed all claims against Defendants Winn, Wiley, Masopust, and Shartle and ruled that Plaintiff could proceed against Defendants Molina, Ortega, Rios and Chavez for any actions allegedly denying him due process, but only for the time period between June 13, 2005 and January 5, 2006. *Order Granting, in Part, Motion to Dismiss* [#60] at 17-18.

Procedural due process protects the individual against "arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). While it is true that "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," *Shaw v. Murphy*, 532 U.S. 223, 229 (2001), "[t]here is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff*, 418 U.S. at 555-56. In general, a plaintiff must make two showings in order to proceed on a procedural due process claim. *See Bartell v. Aurora Pub. Sch.*, 263 F.3d 1143, 1149 (10th Cir. 2001). First, a plaintiff must demonstrate that he possesses a protected liberty or property interest. *Id.* Second, a plaintiff must show the procedures utilized were inadequate under the circumstances. *Id.* at 1149.

The Constitution does not in itself create any liberty or property interest and therefore "[t]he Due Process clause standing alone confers no liberty interest in freedom from state action 'within the sentence imposed.'" *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (citation omitted). Rather, liberty interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure benefits and that support claims of entitlement to those

benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). For prisoners, a liberty interest is only found in a "restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . ., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. "The Supreme Court mandate since *Sandin* is that henceforth we are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest." *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) (internal quotation marks and citation omitted). Therefore, "the touchstone of the inquiry . . . is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life." *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (internal quotation marks and citation omitted).

Prisoners do not have a constitutionally recognized liberty interest in a particular security classification, nor do they have a constitutional right to be confined in particular prison. *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."); *Meachum v. Fano*, 427 U.S. 215, 228 (1976) ("Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections so long as prison officials have discretion to transfer him for whatever reason or for no reason at all."). Therefore, the mere placement in administrative segregation does not, on its own, implicate a liberty interest. *See Sandin*, 515

U.S. at 484; *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996). Indeed, "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt*, 459 U.S. at 468. Nonetheless, the duration and degree of segregation may be so severe as to implicate the due process clause. *See Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006).

In considering whether Plaintiff's allegations are sufficient to trigger a liberty interest, I must examine the conditions of confinement before I determine whether such conditions impose an atypical and significant hardship on the inmate. *See Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006) (citing *Gaines v. Stenseng*, 292 F.3d 1222, 1225-26 (10th Cir. 2002)). A determination of what constitutes an atypical and significant hardship necessarily includes a consideration of whether the condition in question is a dramatic departure from what would be expected of a person serving a similar sentence. Those "relevant factors might include" the following: (1) whether the segregation "relates to and furthers a legitimate penological interest"; (2) whether the conditions of the segregation "are extreme"; (3) whether placement in administrative segregation "increases the duration of confinement"; and (4) whether the placement "is indeterminate" in length. *Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007).

Plaintiff alleges that his assignment to administrative detention at USP-Florence imposed atypical and significant hardships in relation to the ordinary incidents of prison life. Specifically, he alleges that while he was in administrative detention, he was confined to his cell twenty-three hours per day, was denied access to the commissary twenty-three hours per day, was placed in handcuffs any time he left his cell, and had restricted access to the telephone, showers, recreation, the law library, and educational and rehabilitative programs.

He also claims that he was allowed only non-contact visits with family members, and was provided "limited access" to medical and dental care. He alleges that these conditions are more onerous than those provided to general population inmates, but he does not expressly state how they are different.

Plaintiff also alleges that continued confinement in administrative detention required periodic review, but that the required procedures were not followed by the prison staff. He alleges that he was not allowed to attend or participate in his "30 day SRO reviews" and was not advised or provided a copy of any findings made during these reviews. He also claims that he was denied a hearing that met the requirements of 28 C.F.R. § 541.17, within 7 days after he was assigned to administrative detention for his own protection, or within 7 days after he objected to his continued assignment to administrative detention. He also claims that his assignment to administrative detention should not have exceeded 90 days without clearly documented reasons for an extension. Finally, he claims that he should have been transferred to another prison where his safety was not threatened and where he could have been integrated into the general population.

Applying the first *DiMarco* factor, the Court examines whether Plaintiff's "segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation ...." 473 F.3d at 1342. Plaintiff was placed in administrative segregation because Defendants believed his safety was at risk in the general population. Other inmates in the general population might have been aware that Plaintiff was a government witness in a murder investigation. Moreover, Plaintiff himself requested that he be placed in protective custody for his own safety.

Inmates who assistant law enforcement officials are often targeted for violence by

other inmates. *Motion* [#93] Ex. B at ¶ 4. In such circumstances, administrative segregation serves a legitimate penological interest. *Estate of DiMarco*, 473 F.3d at 1342 (recognizing that safety of an inmate is a legitimate factor in segregating inmate); *Slusher v. Samu*, No. 04-02187-WDM-KLM, 2008 WL 791959, at *5 (D. Colo. Mar. 21, 2008) (stating that placing inmate in segregation related to the legitimate penological interest of ensuring his safety). "[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Plaintiff's segregation was not arbitrary, but rather a response to a legitimate interest in maintaining order in the prison. *See Turner v. Safley*, 482 U.S. 78, 89-91 (1987).

Considering the second factor enunciated in *DiMarco*, namely whether the conditions of placement are extreme, Plaintiff alleges that the conditions of his confinement in administrative segregation differed greatly from conditions in the general population. According to the complaint, those conditions include twenty-three hours a day in the cell and "less access to the telephone, showers, recreation, the law library, and certain educational and rehabilitative programs." *Complaint* [#3] at 5. Plaintiff also states that all family member visits were non-contact, he had limited access to health care, and that his access to the commissary was restricted. *Id.*

In response, Defendants assert that the conditions in the SHU were not atypical or extreme. They have produced an affidavit from a prison official regarding those conditions. According to Defendants, inmates in the SHU are allowed to receive legal materials. *Motion* [#93] Ex. B at ¶ 6a. All inmates, not just those in the SHU, are subject to restrictions on the days they can purchase items from the commissary. *Id.* at ¶ 6c. Unless they have had the privilege revoked, SHU inmates are permitted personal visitors and allowed to have physical

contact with those visitors. *Id.* at ¶ 6e. SHU inmates' telephone privilege only allow for one call per month, whereas the general population does not have that limit. *Id.* at ¶ 6f. SHU inmates are allowed five hours of recreation per week. *Id.* at ¶ 6i. Health Services visits the SHU on a daily basis and a SHU inmate's access to health care does not vary from that available to the general population. *Id.* at ¶ 6g.

Even if Plaintiff's description of the conditions in the SHU is accurate, he has still failed to show that his detention in administrative segregation met the *Sandin* test regarding extreme conditions. For example, in *Wilkinson*, 545 U.S. at 223, the Court found that the conditions at a state Supermax facility imposed a significant and atypical hardship where: (1) all human contact was prohibited; (2) the lights were on 24 hours per day; (3) inmates could only exercise one hour per day in a small indoor room; (4) assignment was indefinite; and (5) inmates otherwise eligible for parole were disqualified. However, in *Jordan v. Federal Bureau of Prisons*, 191 Fed. Appx. 639, 653 (10th Cir. July 25, 2006) (unpublished decision), the Tenth Circuit agreed with the district court that summary judgment was appropriate on the issue of whether an inmate confined in segregation at ADX and USP-Florence for five years pending a murder investigation had a protected liberty interest. The inmate alleged that he was denied access to radio, television, education and recreational programs and medical and psychological services. *Id.* at 644. He also alleged that he was limited to one social call per month and his interaction with other inmates and recreation were strictly curtailed. *Id.* The Tenth Circuit found that given the totality of the circumstances, including that the length of the prisoner's sentence was unaffected, his duration of confinement in segregation was not indefinite but tied to the length of the investigation, his segregation did not deviate substantially from the conditions imposed upon

those in the general population, and the prisoner continued to commit disciplinary infractions further contributing to the length of his segregation, the inmate failed to prove he had a protected liberty interest. *Id.* at 652-53.

Reading Plaintiff's allegations in light of *Wilkinson* and *Jordan,* he has not shown that the conditions in the SHU were extreme in nature. The conditions faced by Plaintiff were certainly not as severe as those imposed on the plaintiffs in either *Wilkinson* or *Jordan*. Therefore, in light of applicable case precedent, the Court cannot find that the conditions faced by Plaintiff created an atypical and significant hardship that established a protected liberty interest.

As to the third factor cited by *DiMarco,* Plaintiff has not alleged that his placement in the SHU increased the duration of his confinement. Finally, Plaintiff's removal from the general population was not indeterminate in length. His administrative detention was temporary and ended when he transferred to another facility for his safety.

The Court finds that Plaintiff's time in the SHU did not impose upon him an atypical and significant hardship in relation to the ordinary incidents of prison life. Because Plaintiff has failed to adequately allege the deprivation of "any liberty interest to which he was entitled, no particular process was constitutionally due or required." *Templemen*, 16 F.3d at 371. There are no genuine issues of material fact and Defendants are entitled to summary judgment.

## IV. Conclusion

Based on the foregoing, I **RECOMMEND** that Defendants' Motion for Summary Judgment be **GRANTED** and that judgment be entered in favor of the Defendants.

Under Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: June 17, 2009

                                                    BY THE COURT:

                                                     s/ Kristen L. Mix
                                                    U.S. Magistrate Judge
                                                    Kristen L. Mix