In the United States District Court
For The District Of Colorado

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUL 10 2009

GREGORY C. LANGHAM
CLERK

Civil Action No. 07-cv-00025-PAB-KLM

Michael Thompson
    Plaintiff,

v.

H.A. Rios, Jr. et al.,
    Defendants

Plaintiff Objections to Magistrate Judge
Kristen L. Mix Recommendation to Grant
Defendants Motion for Summary Judgement.

Comes Now, Plaintiff Michael Thompson Pro-se, hereby
respectfully moves this honorable court, in ordering
the Defendants Motion for Summary Judgment
be denied in accordance with Fed. R. Civ. P. Rule 72.

## I. Background

Plaintiff is a Washington, D.C prisoner serving a 25 year
sentence from the D.C Superior Court for one sole count
of Armed Robbery which was described by Government
during trail as a drug deal gone bad. The Plaintiff has
never been charged or convicted of Armed Bank Robbery
as was alleged by Magistrate Judge Kristen L. Mix in
her reccommendation to grant Defendants Motion for Summary
Judgment. The plaintiffs alleged offense in which he

was convicted allegedly took place in the back seat of a car, in a alley in Washington, D.C, not a bank.

On May 13, 2004 while Plaintiff was incarcerated at USP-Florence, Plaintiff was placed in the prison's Special Housing Unit ("SHU") on Administrative Detention ("AD") status, as a protection case. At the Plaintiff's initial placement in the SHU on AD status the Plaintiff did not object to this placement due to him being promised by prison officials that he was being transferred to another prison In June of 2004.

In June 2004, Plaintiff was transferred to the CTF-CCA Facility in Washington, D.C. on a writ. This writ was not to testify on the governments behalf, nor was the Plaintiff even seen by any government officails while on that writ as was alleged in Magistrate Judge's Reccomendation. That is a lie created by the defendants that has never been proven by any documentation. Plaintiff returned to USP-Florence on September 9, 2004 and was placed back in the SHU. There was no continued investigation into whether Plaintiff could return to the general population, nor did the plaintiff ever get interviewed as part of an investigation and state anything to prison staff. Once again these were lies told by the government to misled the court. The Defendants have never presented the court with any investigative reports, notes or affidavits for proof. The Defendants merely stated these lies to the court through motions filed by them and the court has accepted these false statements as the truth. The fact is that the Defendants decided

when they first placed the Plaintiff in the SHU on AD status
as an protection case that he would never return to the general
prison population.

       From September 9, 2004 to the beginning of 2006
the Plaintiff repeatedly requested to be released to general
population informally and formally. The defendants have
acknowledged this fact. The Plaintiff had very little knowledge
of Federal Regulations regarding being held in SHU on AD
status as a Protective case until he came across
Tellier v. Fields, 230 F.3d 502 (2nd Cir. 2000) which the
plaintiff found to be very similar to the situation he
was in. After reading this case law the Plaintiff became
aware of 28 CFR 541.23 which is titled Protection Cases.
There are three categories of inmates that can be considered
Protection cases (1) Victims of assaults; (2) Inmate
informants; (3) Inmates who have received inmate
pressure to participate in sexual activity. The defendants
would like the court to be under the impression that
the reason they dealt with the Plaintiffs situation
the way the did is because of the sensitive nature of
being a Inmate informant in a murder case. 28 CFR 541.23
governs such cases and the mere existence of 28 CFR
541.23 Titled "Protection Cases" proves that situations
like, similar, and even worst are common in the FBOP
and that this form of procedure was created not for
a reason to place an inmate in AD as a protection case
but rather a procedure to follow in maintaining an
inmate in AD as a protection case.

P.3

28 CFR 541.23 "Protection Cases" (b) states: Inmates who are placed in administrative detention for protection, but not at their own request or beyond the time when they feel they need to be detained for their own protection, are entitled to a hearing, no later than seven days from the time of their admission (or from the time of their detention beyond their own consent). This hearing is conducted in accordance with the procedural requirements of 541.17,(Which is for inmates who are charged with infraction and are facing sanctions and possible criminal charges) as to advance written notice, staff representation, right to make statement and present documentary evidence, to request witnesses, to be present throughout the hearing, and advisement of inmate rights at the hearing, and as to making a record of proceedings.

This is a very formal institutional due process hearing designed to afford inmates to fight his/her fredom from Administrative Detention (AD) as a protection case and to be allowed to be returned to general population. The Plaintiff had a liberty interest in this hearing. The Defendants denied the Plaintiff his right to due process by not affording him his right to this hearing. The Defendants had justification to place the Plaintiff in AD as a protection case, however, once the Plaintiff challenged his confinement in AD as a Protective case their obligation by law to the Plaintiff was to afford him the procedural due process created in 28 CFR 541.23. If the Plaintiff then lost his argument at the above hearing the actions of the defendant would then be legal and justified.

P.4

The Plaintiff made several formal complaints about his continued AD status. The defendants attempted systematically to circumvent the process of these complaints. Example: In February Plaintiff complained to the Regional Director, whom is over the defendants in rank, his desire to be released to general population. The regional Director remanded the Plaintiff complaint back to the defendants along with a memo which stated that he disagreed with the way the defendants were handling the Plaintiff's situation. The memo advised the defendants to change the plaintiff's status from a verified protection case to a unverified protection case. IF the defendants would have obeyed their supervisor, the Plaintiff would have been allowed released back to the general population.

The Plaintiff the complained to the Administrator of National Inmate Appeals which is the final stage of Administrative Remedy. In this complaint the Plaintiff once again requested to be released to the general population. The Plaintiff was given a rather strange response. This response stated that on March 11, 2005 the Plaintiff was released by the defendants to the general population and that the Plaintiff had remained in general population until May 9, 2005 when he received an incident report for insolence toward a staff member. The response further stated that the Plaintiff was deemed appropriate by staff for general population regarding the AD status as an protective case and was sent to the general population where he remained from

5

March 11, 2005 until May 9, 2005. The response claimed that the only reason the Plaintiff was now in SHU was to serve 15 days for disciplinary segregation and no other reason for the Plaintiff being in SHU existed. The truth is that the Plaintiff was never release back to the general population. The plaintiff was placed on AD status in SHU ███ on May 13, 2004 and he remained on AD status in SHU the entire time he spent at USP-Florence, never was the Plaintiff placed back in general population. The Plaintiff was on AD status as a protective case when he received the incident report for insolence. The Defendants somehow misled the Administrator of National Inmate Appeals to believe that I was released to general population regarding the protection case and that I was returned to SHU only because I could not seem to behave myself. This theory would make my complaint frivolous. However, it was not the truth. The Defendants admitted later in their reply in support of motion for summary judgment that the Plaintiff was never released to the general population. Doc. 100 at p.2 Chavez Declaration.

     The Plaintiff is a Pro-Se litigant in a civil action against government prison officials. The Plaintiff has sued the defendants in their individual capacity due the fact they failed to follow regulations created by the federal government which clearly states the rights including the procedural due process which inmates are entitled and prison officials are to afford. These regulations are outlined in this case in 28 CFR 541.23, Titled Protection cases. The only defense from the defendants is why the plaintiff was placed in Administrative Detention. The Defendants are not being sued for placing the plaintiff in segregation, but

for their refusal to afford the Plaintiff the procedural due process in which he had a liberty interest stated in 28 CFR 541.23 (b) after the Plaintiff requested to challenge his detention. It is obvious from the language of 28 CFR 541.23 that this was the sole procedural due process created by the federal government for it's employee's to follow which allows the Plaintiff to fight for his fredom from the confinement of Administrative Detention.

The only so called evidence provided by the Defendants are Special Housing unit records and a Declaration of John Chavez. The Special Housing unit records only document 30-day Segregation Reviews alleged to have taken place by the defendants. However, they have nothing to do with the due process hearing outlined in 28 CFR 541.23. The Plaintiff also used 13 of these same documents in Plaintiff's Motion in Opposition to Defendants Motion for Summary Judgment which he refered to as Exhibits A through M which documents that the Defendants recorded the Plaintiff as being in disciplinary segregation status from May 2005 until approximately September 24, 2005. When in fact the Plaintiff was only in disciplinary segregation status for a 15 day period which began in May, 2005. This is the Plaintiff's evidence to the court that you can not take the information documented by the defendants as being true and exact. Furthemore if the defendants had the plaintiff recorded as being on disciplinary seg status for 4 months, then for those months the official performing those 30 day reviews would have never even considered releasing

2.7

the plaintiff from segregation because an inmate
on disciplinary detention status does not get release
until he has completed that status. As far as the
Declaration of John Chavez; he is not a witness
to any of the plaintiffs civil action. John Chavez
did not even work at USP-Florence during the
time the alleged civil rights violation took place.
John Chavez is merely reciting information from
files that were created by the defendants during a
period of time that John Chavez did not work
at USP-Florence. John Chavez can not swear to
the court the records are true and exact; all he can
swear to is that they exist and what they say.
However, the Plaintiff and John Chavez later stated
to the court that in John Chavez's second Declaration
and in the Plaintiff Motion In Opposition [Doc 98]
that there has been alot of false information documented
by the defendants.

       Procedural due proccess protects the
individual against "arbitrary action of government".
A plaintiff must make two showings in order to
proceed on a procedural due process claim. First, a plaintiff
must demostrate that he possesses a protected
liberty interest. In this case the plaintiff did. He has
provided the court with 28 CFR 541.23 which is
titled protection cases. It is obvious from the language
of 28 CFR 541.23 that the federal government created
the procedural due process hearing outlined there
P.8  for the plaintiff to challenge his confinement

and possibly be released from this confinement.
This is where the liberty interest was created.

Second, a plaintiff must show the procedures
utilized were inadequate under the circumstances.
28 CFR 541.23 Titled "Protection Cases", is the sole
procedure to be utilized under the plaintiff's
circumstances and the defendants failed to utilize
them in anyway, at all.

Plaintiff alleges that his assignment to
administrative detention at USP-Florence imposed
atypical and significant hardships in relation to the
ordinary incidents of prison life. The Plaintiff was
denied access to the commissary items provided to the
general population which includes almost all of the
food items, most of the hygiene items which is necessary
to maintain good health like toothbrushes approved by the
American Dental Association. Skin care products such
as lotions, oils and etc. Hair products to properly maintain
and care for ones hair. Clothing items such as long underwear
to keep warm, along with sweatsuits, hats, gloves.
Even short, tank tops, and etc for one to keep cool.
The Plaintiff was denied access to use the general populations
law library to effectively attend to legal matters.
The Plaintiff was denied access to the education department
which was provided to the general population which included
numerous training courses in everthing from College courses
to rehabilitive programs. The plaintiff was denied access
to the general prison populations religous service department.

P.9

which allows one to practice ones religion with other members of ones religion like being in church or a Temple. The Plaintiff was denied access to use the general population recreation yard which is allowed to the general population to use 9 hours a day 7 days a week. Instead the Plaintiff was forced to have only one hour a day recreation period in a very small cage similar to a dog kennel cage 5 days out of the week. This means 5 hours of recreation a week for the Plaintiff in a dog cage compared to 63 hours a week of recreation in a very large outside area (about 7 acres) filled with a track, baseball field, football field, basketball courts, handball areas, exercise equipment, etc for all general population inmates. The Plaintiff was denied access to eat in the general populations dinning kitchen which allows and inmate access to all you can eat salad bar, vegetable bar, ~~item~~ cereal bar beverage bar, and numerous other food items which is only allowed to the general population inmates. Administrative Detention inmates are given only the mere calories of food which regulation state they only have to. Which means if they give you something to eat which you deem against the diet you wish to eat you will then lack a proper meal. This is why the general populations dinning hall and commissary is very important to an inmate. The Plaintiff was denied the same visitation as the general population. Inmates that are in the general population are allowed contact visits 5 days a week where they are allowed to embrace their visitor(s) with hugs and kisses ▓ at the beginning and end of the visits. The inmate may play boardgames, card games, hold visitors hand, and hold and play

210

with babies and small children. Inmates are also allowed to take pictures with loved ones in the visiting room. Inmates who go on visits in general population visits last for 7 hours. Inmates in Administrative detention are only permitted a one hour visit once a week. Their visitor is not allowed to embrace the inmate due to being separated from the visitor by a two-inch protective glass. This makes Administrative detention inmates visits a chore for visitor who travel from hundreds or in the Plaintiff case ove a thousand miles away to visit an inmate for only one hour, for only one day out of that week. When for a general population inmate who's visit was to travel a thousand miles to visit the inmate would check in to a hotel on a Friday morning, come visit the inmate (contact visit) for 7 seven hours and repeat the same routine on Saturday, Sunday, and Monday. This is a very significant difference. Last, but not least an inmate in administrative segregation is allowed only one 15 minute Phone Call per month. Inmates in the general population are allowed to use the phone numerous times a day, 7 days a week, 30 days a month. This is also a very significant difference. The Special Housing Unit (SHU) where administrative detention status inmates are housed is created for discomfort for the inmates housed there. Administrative detention is given almost exactly the same privileges as inmates on disciplinary dention for fighting, stabbings, drugs etc. The general population is design to allow an inmate as much fredom, programs, access to the outside world, and comfort as possible. The SHU is also known as the hole.

P.11

Whether you are there for Administrative detention or disciplinary detention, you are still in the hole.

The Plaintiff never claimed to have been denied access to commissary 23 hours a day like the Recommendation ■■■ to grant Motion for Summary Judgment for the Defendants. stated. However, the commissary allowed for Administrative detention inmates is only about ten-percent of what is allowed to the general population.

Also inmates in administrative detention must keep a very bright light on in their cell for most of the day.

Due to the fact that the defendants do not controll when an inmate in administrative detention is transferred to another prison the plaintiff's assignment was in fact indefinite. The defendants were previously told by their boss whom does controll transfers (Regional Director) that he did not agree with the plaintiffs detention and that he would not even consider a transfer for at least 18-24 months. This is why the plaintiff spent over 500 days in administrative segregation and not 90 days or less like 28 CFR 541.23 allows for investigations of inmates in administrative detention as a protective case.

The Plaintiff was continually housed in a cell designed for only two men with one to three cellmates at a time, meaning one or two inmates would be forced to sleep on the concrete floor litterally inchs away from the toilet.

Futhermore, the plaintiff's cellmates while in AD status were not other inmates that were government witnesses, these inmates were mostly gangmembers whom were in AD status for nothing more than clashing with other gangmembers. For this reason the plaintiff was not

P.12

any safer in SHU on AD status, than he would have been in the general population. The Plaintiff interacted in the SHU with the same inmates from the general population.

The plaintiff is asking the court to once again review the information in Plaintiff's Motion in Oppossition to Defendants Motion For Summary Judgment [Doc. 98] along with the Exhibits A to N attached to that motion. The Plaintiff does not agree that a Summary Judgment would not resolved the plaintiffs claims fairly, and the plaintiff would like to be allowed to persue his claim in trial.

For the above reasons the plaintiff requests that the Defendants Motion For Summary Judgment be denied.

Respectfully Submitted,

Michael Thompson
31082-007
P.O. BOX 1500
Butner, NC. 27509

P.13

## Certificate of Service

I hereby certify that on June 28, I mailed the foregoing to the Clerk of The Court and the defendants at the following addresses

Clerk of the Court
U.S District Court
901-19TH St., Room A105
Denver, CO. 80294-3589

U.S Attorney's Office
District of Colorado
1225-17th Street, Suite 700
Denver, Colorado 80202

Respectfull Submitted,

Michael Thompson
31082-007
P.O. Box 1500
Butner, NC. 27509